UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SMALL,

    Plaintiff,　　　　　　　　　　　　　　Hon. Paul L. Maloney

v.　　　　　　　　　　　　　　　　　　　Case No. 1:24-cv-1142

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether

the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 31 years of age on his alleged disability onset date. (PageID.64). He successfully completed high school but has no past relevant work experience.[1] *Id.* Plaintiff applied for benefits on September 25, 2021, alleging that he had been disabled since December 8, 2018,[2] due to post-traumatic stress disorder (PTSD), anxiety, narcolepsy, foot injury, back injury, and degenerative disc disease. (PageID.33, 279).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). Following an administrative hearing, ALJ Cynthia Harmon, in an opinion dated September 25, 2023, determined that Plaintiff did not qualify for disability benefits. (PageID.33-97). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

---

[1] Plaintiff has no past relevant work, as that term is defined by the relevant Social Security regulations. But
Plaintiff did serve in the United States Army, in both an active duty and reserve capacity, for several years. (PageID.64, 76-79, 224-41, 265-76). Plaintiff was eventually awarded a 100% disability rating by the Army and discharged, with benefits, due to his impairments. (PageID.76-79, 274).

[2] Plaintiff later amended his disability onset date to March 11, 2020. (PageID.78).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from osseous hypertrophy of the right hip; femoroacetabular impingement of the right hip; scoliosis and degenerative disc disease of the cervical, thoracic, and lumbar spine; recurrent major depressive disorder; anxiety; and other specified trauma and stressor-related disorder, severe

impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.35-44).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) he can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds; (2) he can occasionally stoop, kneel, crouch, and crawl; (3) he can occasionally reach overhead bilaterally; (4) he can be exposed to no more than moderate noise levels as defined by the Dictionary of Occupational Titles; (5) he must avoid dangerous work place hazards such as unprotected heights and dangerous moving machinery; (6) he can carry out simple instructions that do not involve complex decision making or judgment; (7) he can tolerate occasional changes in a routine work setting; (8) he cannot work at a production rate pace such as assembly line work or work with hourly quota requirements but can complete daily quotas by the end of the day; and (9) he can have occasional interaction with co-workers, supervisors, and the general public.   (PageID.44).

The ALJ found that Plaintiff had no past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding.  *O'Neal*, 799 Fed. Appx. at

316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid.*

In this case, a vocational expert testified that there existed approximately 305,000 jobs in the national economy which an individual with Plaintiff's RFC could perform. (PageID.65). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I. Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

Plaintiff argues that he is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ "did not include any limitations due to [his] need for daytime naps." (ECF No. 9, PageID.1482). Plaintiff further argues that his impairments "would prohibit him

-6-

from being able to stay on task, maintain attendance or physically attend work on a consistent basis." (ECF No. 9, PageID.1483).

As noted above, the ALJ found that Plaintiff suffers from several severe impairments. The ALJ, however, determined that while Plaintiff experienced narcolepsy and insomnia neither were severe impairments. (PageID.35-40). While less than clear, Plaintiff appears to argue that the ALJ erred by failing to find these to be severe impairments.

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering her decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Commissioner of Social Security*, 528 Fed. Appx. 425, 427 (6th Cir., May 22, 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments. . .does not constitute reversible error").

The ALJ stated that she "considered all [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [his] residual functional capacity." (PageID.39). The accuracy of this observation is apparent when reviewing the ALJ's decision. The ALJ issued a 34-page decision in which she

examined the record, including Plaintiff's narcolepsy and insomnia, in great detail. Any argument that the ALJ erred by failing to find that Plaintiff's narcolepsy and insomnia constituted severe impairments is rejected. *See, e.g., Napier v. Commissioner of Social Security*, 127 F.4th 1000, 1007 (6th Cir. 2025) (observation by ALJ that she considered "all of the claimant's impairments, including impairments that are not severe," sufficient to establish that the ALJ "adequately considered all of a claimant's medical impairments in formulating a residual functional capacity analysis").

Furthermore, Plaintiff has failed to persuade the Court that his narcolepsy and insomnia, alone or in conjunction with any other impairments, result in functional restrictions beyond those recognized by the ALJ. *See, e.g., Hill v. Commissioner of Social Security*, 560 Fed. Appx. 547, 551 (6th Cir., Mar. 27, 2014) ("disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it").

Plaintiff argues that the ALJ's RFC assessment fails to account for his need to take daytime naps or his inability to remain on task and regularly attend work. Regarding Plaintiff's alleged need to nap during the daytime, the ALJ cited to evidence that Plaintiff's sleep-related medications were effective and enabled him to remain awake when necessary. (PageID.36, 83, 614, 620, 1243, 1278, 1377). The ALJ also noted that Plaintiff's activities supported her RFC assessment. Specifically, the ALJ noted that Plaintiff was able to drive "to Kentucky and back to Michigan over the weekend" in June 2023. (PageID.36, 1291). The ALJ further

observed that the record did not contain evidence that Plaintiff exhibited symptoms of narcolepsy during appointments or evaluations. (PageID.36). The ALJ's observations and conclusions are supported by the record and constitute substantial evidence.

Likewise, the ALJ's assessment of Plaintiff's ability to stay on task and regularly attend work is supported by substantial evidence. In support of her RFC assessment, the ALJ noted that during various examinations, Plaintiff appeared alert and oriented, had logical and goal directed thought processes, performed well on tests related to attention and focus, was cooperative in answering questions and following commands, and exhibited normal concentration with no evidence of gross cognitive impairment. (PageID.43, 436, 526, 588, 614, 620-23, 1185-87, 1288, 1295, 1323, 1329, 1333, 1350-55, 1367-68, 1378, 1383). The ALJ further noted that Plaintiff's reported activities, including performing household chores, playing videogames, reading, painting models, and attending college classes, were consistent with her RFC assessment. (PageID.43, 252-55, 525, 561, 599, 619-20, 1184, 1291, 1337, 1354, 1362, 1377, 1382).

The ALJ recognized that Plaintiff experienced certain limitations in his ability to concentrate, persist, and maintain pace. Specifically, the ALJ found that Plaintiff experienced "moderate limitation" in this area of functioning and, accordingly, articulated several non-exertional limitations in her RFC assessment. The ALJ examined the evidence in great detail and her RFC assessment is supported by substantial evidence. Plaintiff has not articulated any error in the ALJ's RFC

assessment but instead merely wishes this Court to re-weigh the evidence and reach a different conclusion. The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute her own opinion for that of a medical professional, the ALJ is not required to tailor her RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).

This is precisely what the ALJ did and the ALJ's RFC assessment is supported by substantial evidence. Plaintiff's argument that the ALJ should have weighed and evaluated the evidence differently is not grounds for relief, however. Accordingly, this argument is rejected.

## II.    Medical Source Opinion

As part of his disability application, Plaintiff submitted a Medical Source Statement, dated May 20, 2019, from Dr. R. Scott Lazzara. (PageID.525-29). Plaintiff argues that he is entitled to relief because the ALJ's "analysis of Dr. Lazzara's opinion does not address his findings of narcolepsy and probable limitations." (ECF No. 9, PageID.1485).

Because Plaintiff filed his application after March 27, 2017, opinions offered by medical sources must be evaluated pursuant to 20 C.F.R. § 416.920c. This

regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 416.920c(a). Instead, the ALJ is required to articulate his determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 416.920c(b)(1).

The term "medical opinion" is defined as "a statement from a medical source about what [an individual] can still do despite [his] impairments and whether [he has] one or more impairment-related limitations or restrictions" in various domains of functioning. 20 C.F.R. § 416.913(a)(2). As Defendant correctly argues, Dr. Lazzara did not articulate any functional limitations related to Plaintiff's narcolepsy. At most, the doctor merely speculated that Plaintiff's narcolepsy *might* impose functional limitations, however, the doctor did not articulate or subscribe to any such limitations. Simply put, the ALJ cannot be deemed to have improperly assessed Dr. Lazzara's opinion because the doctor did not articulate any opinion which it was necessary for the ALJ to assess. *See, e.g., Workman v. Commissioner of Social Security*, 2024 WL 2873278 at *2-3 (N.D. Ohio, June 7, 2024) (where doctor offered recommendations or observations but did not articulate any "specific vocational limitation" from which the claimant suffered, the doctor's statements are not properly characterized as a "medical opinion"). Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: December 26, 2025         /s/ Phillip J. Green
                                PHILLIP J. GREEN
                                United States Magistrate Judge